Cooke, J. (dissenting).
I dissent and vote to affirm the order of the Appellate Division.
Under subdivision 2 of section 365-a of the Social Services Law, an eligible person is entitled to medical assistance in the nature of care, services or supplies which are "necessary to prevent, diagnose, correct or cure conditions in the person that cause acute suffering, endanger life, result in illness or infirmity, interfere with his capacity for normal activity, or threaten some significant handicap.” As pointed out by the majority at the Appellate Division, this broad statutory language does not restrict "medical assistance” to purely physical problems. It is obvious that the sex conversion operation as applied for fits within the contemplation of being "necessary to * * * correct or cure conditions in the person that * * * interfere with his capacity for normal activity.”
There is no dispute as to the genuineness of petitioner’s long-standing condition. At the January, 1973 hearing, Dr. Shagan, Chief of the Division of Endocrinology and Metabolism at the Coney Island Hospital and a clinical instructor of the Downstate Medical Center, testified that petitioner was first seen at the former hospital on July 13, 1970 and that petitioner is a true transsexual. Assigning reasons, Dr. Shagan recommended the surgery and stated there was a need for it. He indicated that failure to perform the surgery could result in petitioner becoming dependent on welfare at a great cost *284 because of petitioner’s employment difficulties as a transsexual. Dr. Shagan’s opinion as to necessity is supported, not contradicted, by a 1970 report of Dr. Ettinger, a staff psychiatrist at Coney Island Hospital, which states "That there" is severe psychopathology in this individual cannot be denied” and recommends referral to a hospital where the sex change procedures can be done. Statements selected from the Ettinger report that he could detect no formal disturbance of thinking and that there is no suicidal thinking, under the heading of Mental Status, do not answer the ultimate question and do not negate Dr. Ettinger’s ultimate conclusions, under Recommendation, of severe psychopathology and his recommended referral to a hospital for the surgical procedures. The referral ultimately led to Dr. Shagan’s institution of preliminary hormone therapy, with its ensuing cancer-producing potential. A person is not cast outside the pale of the statute’s eligibility because, on the basis of medical advice for the treatment of a bona fide condition, he has embarked in good faith on a course of medical treatment.
No examination of petitioner was made by the respondent agency. The full text of a May 15, 1972 letter from Dr. Mazzola, Director of Health Care Services, to Dr. Shagan read: "This is to inform you that your request for Trans-sexual Surgery for above patient [petitioner] is disapproved on a medical basis.” This letter is without probative value in considering the issue at hand.
There was an absence of medical evidence supporting a denial of petitioner’s application and there was a lack of substantial evidence supporting the determination of the Commissioner of the New York State Department of Social Services after a hearing (see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 230-231). Accordingly, the Appellate Division was correct in annulling that determination.
Chief Judge Breitel and Judges Jasen and Gabrielli concur with Judge Wachtler; Judge Cooke dissents and votes to affirm in a separate opinion in which Judges Jones and Fuchsberg concur.
Order reversed, without costs, the commissioner’s determination confirmed and the petition dismissed.